IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DOUGLAS CONES<br>*Plaintiff*, | §<br>§<br>§ | |
| v. | §<br>§ | CASE NO.: 1:19-CV-216<br>JURY TRIAL DEMANDED |
| RONALD KELLY<br>*Defendant*. | §<br>§<br>§ | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

1. This is an action for money damages brought pursuant to 42 U.S.C. §§ 1983 and 1985, and the common law and statutes of the State of Texas.

2. Jurisdiction for Plaintiff's federal claims is based on 28 U.S.C. §§ 1331 and 1343(a). Jurisdiction for Plaintiff's state claims is based on supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), in that the claims arose in this district as alleged below.

**Parties**

4. Plaintiff Douglas Cones is a resident of Hays County, Texas.

5. Defendant Ronald Kelly is a resident of Hays County, Texas who can be served with process at his last known address, 354 Drifting Wind Run, Dripping Springs, TX 78620.

6. Kelly deprived the Plaintiff of rights protected by the federal and state constitutions. In so doing, he acted under color of law.

**Factual Allegations**

7. On December 31, 2008, the Dripping Springs Water Supply Corporation ("DSWSC") board of directors signed a 10 year contract with its general manager, Douglas Cones, who had been with them for 22 years. The contract could only be terminated for cause.

8. About two and a half years later on July 11, 2011, during a board meeting the new president of the board, Defendant Ronald Kelly, told the board that he would like to revisit the general managers contract and "see if he would entertain a re-negotiation and/or a re-discussion on the contract that he has currently signed."

9. A month later on August 8, 2011 during another board meeting, the board went into executive session to discuss some items. One of the items discussed was "necessity of succession planning for the Dripping Springs Water Supply Corporation General Manager."

10. The board also discussed "consultation with legal counsel regarding the general manager's existing contract and the ability of the board to negotiate with the general manager to make changes to it."

11. Sometime after that, the board president Defendant Ron Kelly told a CPA named Roy Pursley that nobody on the current board wanted to give the general manager his retirement pension so they were going to have an investigation in order to find something. When the CPA asked Ron Kelly what if you don't find anything, Mr. Kelly replied, "I always find something."

12. So on August 23, 2011 the board authorized an investigator to investigate any suspected allegations of misconduct and/or misapplication of DSWSC assets.

13. Shortly after that Ronald Kelly moved to terminate Doug Cones contract and to refer him to the Hays County District Attorneys' office for criminal prosecution.

14. One of the allegations that Mr. Kelly made against Mr. Cones was that he had placed company property, specifically an old Ford backhoe and an old GMC pick up truck on Mr. Cones' property. A former board member, however, Mr. Charles Sellers, had specifically told Mr. Kelly that the previous board had actually asked Mr. Cones to store the items on his property because they were an eyesore and the City of Dripping Springs was complaining about it. Mr. Sellers even wrote a letter to Mr. Kelly and the board and provided it to them prior to the decision to refer Mr. Cones for criminal prosecution. When Mr. Kelly asked Mr. Cones to return the items, he did so promptly. Despite these undisputed facts, Mr. Kelly referred Mr. Cones for criminal prosecution for allegedly "stealing" the old backhoe and pick up truck.

15. Another allegation Mr. Kelly made against Mr. Cones was that he had allegedly "stolen" vacation pay and a bonus. These checks had in fact been written by Mr. Kelly himself, so his assertion that the money was somehow "stolen" was both false and ridiculous.

16. Another allegation that Mr. Kelly made against Mr. Cones was that he had used the DSWSC'S credit card for personal expenses. Not only was this allegation untrue, but there was absolutely no evidence of this allegation and it was demonstrably false. Mr. Kelly also accused Mr. Cones of stealing dirt that he claimed belonged to DSWSC when Mr. Kelly Knew the dirt did not belong to them.

17. Despite these facts, Mr. Kelly continued to assert to the prosecutors that Mr. Cones had committed the theft and/or other illegal conduct and that the evidence to support it would eventually come out in the civil trial Doug Cones had filed for breach of contract. Mr. Kelly continued to insist that they prosecute Mr. Cones. Of course no such evidence was ever provided.

18. Defendant initiated and procured the multiple issuances of arrest warrant for Plaintiff despite that there was no evidence of any illegal act committed by Plaintiff.

19. Defendant had no evidence that Plaintiff had done anything illegal, and did not have probable cause that Plaintiff had done anything illegal and did not have a reasonable belief that Plaintiff had done anything illegal.

20. Defendant did not make any effort to recall or quash the arrest warrants for Plaintiff.

21. The Plaintiff was arrested and detained on multiple occasions, despite the fact that he had committed no illegal act and despite the fact that there was no probable cause for his arrest. Mr. Cones was originally arrested on June 11, 2013. He was also arrested again on April 13, 2016 for basically the same charges. The charges against him based on Mr. Kelly's false allegations remained pending for almost five years.

22. Plaintiff was eventually indicted in Cause No. CR 15-0886 with Theft in an alleged violation of the Texas Penal Code Section 31.03.

23. Mr. Cones civil case for breach of contract went to a jury trial in December, 2017. In that case, the jury found overwhelmingly in favor of Mr. Cones finding that the water corporation had breached its contract with him and awarded Mr. Cones a verdict of $1,438.454.20. Mr. Kelly falsely testified at that trial against Mr. Cones. The jury saw through the misrepresentations.

24. Defendant Kelly's so-called investigation formed the basis for the indictment against the Plaintiff. This investigation was not independent and in fact was specifically done so that Mr. Kelly could find a way out of having to pay Mr. Cones' contract with DSWSC.

25. Plaintiff had committed no illegal act.

26. There was no probable cause or any other legal justification to arrest, criminally charge and/or indict Plaintiff.

27. Plaintiff had not violated any city, state or federal law.

28. Defendant did not have any reasonable basis to believe that Plaintiff had violated, or was about to violate, any city, state or federal law.

29. Defendant did not have any probable cause that Plaintiff had violated, or was about to violate, any city, state or federal law.

30. On March 7, 2018, the District Attorney of Hays County and the District Court dismissed all of the charges against Plaintiff.

31. Defendant fraudulently misled the prosecutors that Plaintiff had committed theft and other criminal conduct.

32. Defendant fraudulently claimed that its investigation was evidence that Plaintiff had committed theft or other criminal conduct.

33. These false allegations and fraudulent misrepresentations were committed for the purpose of arresting, detaining, indicting, and initiating and pursuing criminal charges against Plaintiff in order to get out of paying Mr. Cones' for his contract with DSWSC.

34. The Defendant deliberately withheld information that exculpated the Plaintiff and proved his innocence.

35. The actions of Defendant caused Plaintiff's wrongful arrest, detention, indictment, and prosecution.

36. One of the improper purposes in pursing criminal charges against Plaintiff was to get out of having to pay Plaintiff's contract.

37. Multiple media publications reported that Plaintiff had committed theft, misappropriated funds, and otherwise committed criminal conduct as the result of the Defendant's false allegations and resulting criminal charges.

38. As a direct and proximate result of the acts of the Defendant described above, Plaintiff has sustained substantial actual damages.

39. As a direct and proximate result of the acts of the Defendant described above, Plaintiff suffered damages, including (but not limited to) loss of physical liberty, loss of time, loss of normal life, loss of reputation, and emotional distress; and pecuniary damages, including attorneys' fees, travel costs, monies posted for bond, lost wages, income and benefits.

## COUNT ONE
## 42 U.S.C. §§ 1983 and 1985 Fourth Amendment Claim

40. The Plaintiff incorporates and re-alleges the above paragraphs.

41. The Plaintiff was arrested, seized, and detained without probable cause in violation of the Fourth Amendment to the United States Constitution.

42. Defendant, acting under color of law, conspired to have Plaintiff arrested, seized and detained without probable cause.

## COUNT TWO
## 42 U.S.C. §§ 1983 and 1985 Fourteenth Amendment Claim

43. The Plaintiff incorporates and re-alleges the above paragraphs.

44. The Plaintiff was charged with criminal charges and prosecuted despite the fact that there was no probable cause for the charges and no reasonable basis to accuse him of illegal activity in violation of the Fourteenth Amendment to the United States Constitution.

45. The Defendant manipulated evidence, concealed the truth, and abused the criminal process to pursue criminal charges against Plaintiff in violation of the Fourteenth Amendment to the United States Constitution.

46. Defendant, acting under color of law, conspired to violate Plaintiff's rights under the Fourteenth Amendment.

## COUNT THREE
### Malicious Prosecution Claim Against Defendant

47. The Plaintiff incorporates and re-alleges the above paragraphs.

48. A criminal prosecution was commenced against Plaintiff.

49. The Defendant initiated or procured the prosecution.

50. The prosecution was terminated in plaintiff's favor.

51. The plaintiff was innocent of the charges.

52. The defendant did not have probable cause to initiate or procure the prosecution.

53. The defendant acted with malice.

54. The plaintiff suffered damages as a result of the prosecution.

## RELIEF

55. Wherefore, the Plaintiff demands a trial by jury, and upon a verdict in his favor, asks that compensatory damages be assessed in an appropriate amount, as well as punitive damages for those claims for which they are available by law, and that they be awarded costs, attorneys' fees, and all other relief to which he is entitled.

Respectfully submitted,

THE MELTON LAW FIRM, P.L.L.C.
2705 Bee Cave Road, Ste. 220
Austin, Texas 78746
(512) 330-0017 Telephone
(512) 330-0067 Facsimile


/s/ John F. Melton
John F. Melton
Jmelton@jfmeltonlaw.com
State Bar No. 24013155
ATTORNEYS FOR PLAINTIFF